### In re MAIOLA.

(Circuit Court, S. D. New York. February 2, 1895.)

**1. IMMIGRATION—CONTRACT LABOR ACTS—TO WHOM APPLICABLE.**

The statutes of the United States relating to the exclusion of contract laborers, including the act of March 3, 1891, making the decision of the immigration officers final as to the right of such laborers to land, are directed solely against alien immigrants, not against alien residents returning after a temporary absence; and the courts therefore have power, upon habeas corpus, to inquire whether one who is refused admission to the country by the immigration officers is or is not an immigrant, and so within the jurisdiction of such officers.

**2. SAME—WHO ARE IMMIGRANTS.**

An unmarried man, who has immigrated to the United States in 1892, with the intention of making his home there; has remained about two years, working at his trade; and then, being taken ill, has returned to his native country, remained about ten months, doing no work; and then, in 1895, returns to the United States,—is not an immigrant on his return, in 1895.

This was a petition for a writ of habeas corpus by Giacondo Maiola, alleging that he was illegally restrained of his liberty by the immigration officers at the port of New York.

Ullo, Ruebsamen & Cochran, for commissioners.

John Palmieri, for the immigrant, Maiola.

LACOMBE, Circuit Judge. The relator is detained, under a decision of the immigration authorities, as "an alien or foreigner intended to be imported into the United States under a contract or agreement to perform labor therein." By statute of the United States, the decisions of inspecting officers touching the right of any alien to land, when adverse to such right, are made final, and it has been held to be within the constitutional power of congress to make them so. See In re Howard, 63 Fed. 263, and statutes and authorities therein cited. The relator, however, contends that under the decisions of this court (In re Panzara, 51 Fed. 275; In re Martorelli, 63 Fed. 437) the question whether or not the alien is an immigrant may still be inquired into, since courts, upon habeas corpus, will always look into the question of jurisdiction, and jurisdiction to decide finally touching the right to land has only been confided to the inspecting officers in the case of an immigrant. The relator's point is well taken. The entire body of statute law touching the exclusion of contract laborers, viz. Act Feb. 26, 1885 (23 Stat. 332); Act Feb. 23, 1887 (24 Stat. 414); Act Oct. 19, 1888, c. 1210, Deficiency Bill (25 Stat. 566); Act March 3, 1891; and Act March 3, 1893,—conclusively show that it is directed solely against alien immigrants, not against alien residents when returning after a temporary absence. The very section (section 8) of the act of 1891 under which the inspection officers acted, and which makes their adverse decision final, provides for an inspection of "alien immigrants" who may arrive by water; and it is testimony touching the right of "such aliens" to enter the United States that the inspecting officers are to take and consider, during which inspection "such aliens" are to be properly housed, fed, and cared for. The next en-

suing clause in the same paragraph, which provides for the finality of a decision made by the inspection officers "touching the right of any alien to land," can refer only to those aliens whose inspection by such officers has been provided for, viz. "alien immigrants"; and if it appear that an alien is restrained of his liberty solely by reason of a decision of the inspection officers adverse to his right to land, and further appears that he is not an alien immigrant, he must be discharged from custody, since it is only as to alien immigrants that jurisdiction finally to determine as to the right to land has been confided to the inspection officers. In the case now before the court, it appears that the relator, an unmarried man, sold out what small property he had in Italy, some three years ago, and thereupon immigrated to this country, with the intention of making it his permanent home. He remained here for about two years, working at his trade as a silk weaver, and keeping a small grocery store, apparently in partnership with his brother. He was taken ill about a year ago with some disease of the lungs or chest, and after he had been to two different hospitals the doctors advised him to go to Italy. He sold out his grocery business, followed their advice, and remained in Italy for some 10 months, doing no work, but living with his father and mother, and gradually improving in health. When sufficiently recovered, he returned to this country, as was his intention when he left it. His case is closely similar to those of In re Panzara, and of In re Martorelli, above cited. He was an immigrant when he came here, in 1892, but not when he returned here, in 1895. He is therefore discharged.